# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BENJAMIN HAYFORD,**

       **Plaintiff,**

       **v.**                                    **CASE NO. 23-3011-JWL**

**FEDERAL BUREAU OF
PRISONS, et al.,**

       **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Benjamin Hayford is hereby required to show good cause, in writing to the undersigned, why his Complaint should not be dismissed for the reasons stated herein.

### 1.  Nature of the Matter before the Court

Plaintiff proceeds pro se in this civil rights case brought under 28 U.S.C. § 1331.  Plaintiff has paid the filing fee.  At the time of filing, Plaintiff listed his address as the Turley Correctional Center in Tulsa, Oklahoma.[1]

Plaintiff alleges that he was confined at the Federal Prison Camp at the United States Penitentiary in Leavenworth, Kansas ("USPL") from January 20, 2021, through February 8, 2022, and was confined at the Turley Residential Center in Tulsa, Oklahoma, from February 8, 2022, through April 29, 2022.  (Doc. 1, at 3.)  Plaintiff's claims relate to his incarceration at USPL.

Plaintiff alleges that "prison officials" at USPL prevented him from wearing his religious clothing for 191 days; prevented him from participating in weekly religious communal services for five weeks while in segregation for 31 days; prevented Plaintiff from meeting with clergy and

---

[1] The BOP website shows Plaintiff's current location as Dallas RRM.  *See* https://www.bop.gov/inmateloc/ (last visited February 10, 2023).

religious volunteers for 55 weeks; and kept Plaintiff from receiving and using two BOP pre-approved Church magazines for 19 weeks.  *Id*. at 3–4.   Plaintiff alleges that the prison officials' actions caused him to sustain "emotional injuries, including mental anguish suffered from the entire episode."  *Id*. at 4; *see also* Doc. 1–2, at 4 ("these offenses directly caused me emotional injuries, including mental anguish suffered from the entire episode").   Plaintiff alleges that he presented his claims through the administrative remedies procedures to Warden Hudson, and did not receive a response.  *Id*. at 6.  He also expressed his concerns to Chaplains Dale Sutton and (fnu) Presser, and Dr. Carpenter and Dr. Brian Vo.  (Doc. 1, at 6.)

Plaintiff alleges violations of:  his First Amendment free exercise rights; his Fourteenth Amendment liberty rights; the Religious Freedom Restoration Act ("RFRA"); the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); and the International Covenant on Civil and Political Rights ("ICCPR").  *Id*. at 3.   Plaintiff also alleges that he is bringing this action under the Federal Torts Claim Act ("FTCA").  *Id*. at 5.

Plaintiff seeks a declaratory judgment, compensatory damages in the amount of $920,652, 592.00, and his attorneys' fees.  *Id*.  Plaintiff states that "[t]he wrongs alleged in this complaint are not occurring at the present time."  *Id*.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*,

561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

Plaintiff acknowledges that he is no longer housed at USPL and that "[t]he wrongs alleged in this complaint are not occurring at the present time." (Doc. 1, at 5.) Plaintiff seeks compensatory damages, declaratory relief, and attorneys' fees. Plaintiff names the Federal Bureau of Prisons ("BOP") and the U.S. Department of Justice as the sole defendants.

### 1. 42 U.S.C. § 1983

Plaintiff references 42 U.S.C. § 1983 as a source of jurisdiction for his claims. (Doc. 1, at 2.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A defendant acts "under color of state law" when he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id*. at 49 (citations omitted). Plaintiff provides no factual claim or support for a claim that any defendant acted under color of state law.

4

**2.  Claims Under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)**

Plaintiff has not shown that a *Bivens* remedy is available for his First and Fourteenth Amendment claims.  *Bivens* claims cannot be asserted directly against the United States, federal agencies, or federal officials acting in their official capacities.  *Smith v. U.S.*, 561 F.3d 1090, 1099 (10th Cir. 2009) (citing *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001) (federal agencies, officials in their official capacities), *F.D.I.C. v. Meyer*, 510 U.S. 471, 485–86 (1994) (federal agencies)); *see also Heffington v. Bush*, 337 F. App'x 741, 743 (10th Cir. 2009) (unpublished) (holding that a constitutional claim for damages against a federal agency is barred by sovereign immunity).  Therefore, any *Bivens* claim would be barred against the named defendants.

Furthermore, even if Plaintiff were to assert individual-capacity claims,  the Supreme Court has "declined to extend *Bivens* to a claim sounding in the First Amendment" and has "not found an implied damages remedy under the Free Exercise Clause."  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (citing in part *Bush v. Lucas*, 462 U.S. 367 (1983)); *see also Ealom v. United States,* No. 18-3045-SAC, 2018 WL 1899135, at *4 (D. Kan. Apr. 20, 2018) *(citing Mochama v. Zwetow,* No. 14-2121-KHV, 2017 WL 36363, at *11 (D. Kan. Jan. 3, 2017)); *Williams v. Klien,* 20 F. Supp. 3d 1171, 1175 (D. Colo. 2014); *Hall v. Shumard,* No. 15-cv-01949-RBJ-MJW, 2017 WL 694589, at *2 (D. Colo. Feb. 21, 2017).  The Supreme Court "has made it clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Zigler v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citation omitted).

**3.  Religious Freedom Restoration Act ("RFRA") (42 U.S.C. § 2000bb *et seq.*)**

Plaintiff asserts a claim under RFRA.  Although the Supreme Court has held that damages claims are permissible in individual-capacity suits under RFRA, Plaintiff has not brought

individual-capacity claims in this case.  *See Tanzin v. Tanvir*, 141 S. Ct. 486, 489–93 (2020) ("We conclude that RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities.")[2]  Individuals do not enjoy sovereign immunity.  *Id*. at 493.

To the extent plaintiff seeks damages under RFRA against the Defendants in this case, sovereign immunity bars any such claim.  *See Hale v. FBOP*, 759 F. App'x 741, at n.4 (10th Cir. 2019) ("RFRA does not waive the federal government's sovereign immunity from damages.") (citing *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 840-41 (9th Cir. 2012); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006)).  The congressional waiver of sovereign immunity under RFRA is limited to RFRA claims seeking injunctive relief.  *See Crocker v. Durkin,* 159 F. Supp. 2d 1258, 1269 (D.Kan.2001), *aff'd,* 53 F. App'x 503 (10th Cir. 2002).

However, Plaintiff is not entitled to injunctive relief in this case.  Plaintiff is no longer housed at USPL and has acknowledged that "[t]he wrongs alleged in this complaint are not occurring at the present time."  (Doc. 1, at 5.)  Therefore, any request for injunctive relief is moot. Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies.  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).  "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing."  *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*.  Consequently, "[m]ootness is a threshold issue because the existence of a live case or

---

[2] The Court notes that the plaintiffs in *Tanzin* were not prisoners.  Therefore, 42 U.S.C. § 1997e(e)'s physical injury requirement was not applicable.

controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974). The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement. *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. *See Crocker*, 53 F. App'x at *1 (inmates' transfer from USPLVN mooted their claim for injunctive relief to bar USPLVN officials' alleged violation of RFRA).

### 4. Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc *et seq.*)

Plaintiff's claims under RLUIPA are similarly subject to dismissal. "[N]either RFRA nor RLUIPA include waivers of the federal government's sovereign immunity for actions requesting money damages." *The Cherokee Nation West v. U.S. Army Corps of Engineers*, 2016 WL 4548441, at *4 (N.D. Okla. Aug. 31, 2016) (citing *see United States v. Dillard*, 884 F. Supp. 2d

1177, 1182 (D. Kan. 2012), *aff'd,* 795 F.3d 1191 (10th Cir. 2015) (no waiver of federal government's sovereign immunity for monetary damages claims under RFRA or RLUIPA)); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody.") (citation omitted).

### 5. Official Capacity Claims

Any official capacity claims against federal officials would also be subject to dismissal. *See Peterson v. Timme*, 621 F. App'x 536, 541 (10th Cir. 2015) (unpublished) (finding that a suit against a federal official in his official capacity is actually a suit against the sovereign—the United States—and is barred by sovereign immunity) (citing *Farmer v. Perrill,* 275 F.3d 958, 963 (10th Cir.2001) ("[A]ny action that charges [a federal] official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States."); *accord Simmat v. U.S. Bureau of Prisons,* 413 F.3d 1225, 1231 (10th Cir.2005)). "Ordinarily, federal courts lack jurisdiction to entertain such claims in accordance with principles of sovereign immunity." *Id.* (citing *Governor of Kan. v. Kempthorne,* 516 F.3d 833, 841 (10th Cir.2008) ("[C]laims of sovereign immunity implicate our jurisdiction . . . ."); *Merida Delgado v. Gonzales,* 428 F.3d 916, 919 (10th Cir.2005) ("In general, federal agencies and officers acting in their official capacities are also shielded by sovereign immunity.")).

### 6. International Convention on Civil and Political Rights

"[T]he ICCPR is not privately enforceable." *Dutton v. Warden, FCI Estill*, 37 F. App'x 51, 53 (4th Cir. 2002) (stating that to be privately enforceable a treaty must either be self-executing or Congress must have passed implementing legislation and the ICCPR is not self-executing, nor has it been implemented by Congress) (citations omitted). "As a non-self-executing treaty, the ICCPR

'[does] not itself create obligations enforceable in the federal courts.'" *United States v. Rafle*, 2012 WL 1424438, at *9 (S.D. Ind. April 23, 2012) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004)).  The Senate declaration "clarify[ies] that the Covenant will not create a private cause of action in U.S. courts."  *Id*. at n. 2 (quoting United States: Senate Committee on Foreign Relations Report on the International Covenant on Civil and Political Rights, 31 I.L.M. 645, 657 (1992)).

**7**. **Federal Torts Claim Act**

Plaintiff asserts in his Complaint that he "hereby brings this Complaint . . . in accordance with the Federal Torts Claim Act (FTCA), 28 U.S.C. § 1346(b)."  (Doc. 1, at 5.)  Plaintiff has not asserted a claim under the FTCA.  The FTCA, 28 U.S.C. §§ 1346(b)(1), 2671–2680, "allows the United States to be sued for claims arising out of negligent or wrongful acts or omissions of its employees, when such employees are acting within the scope of their duties." *Ingram v. Faruque*, 728 F.3d 1239, 1245 (10th Cir. 2013) (citing § 1346(b)(1)).  "The United States is the only proper defendant in an FTCA action." *Smith v. U.S.*, 561 F.3d 1090, 1099 (10th Cir. 2009) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n.4 (10th Cir. 2001)).  The FTCA "provides the exclusive avenue to assert a claim sounding in tort against the United States." *Franklin Sav. Corp., In re*, 385 F.3d 1279, 1286 (10th Cir. 2004), *cert. denied*, 546 U.S. 814 (2005) (citing 28 U.S.C. § 2679(a), which provides that "the FTCA remedy is 'exclusive' for all 'claims which are cognizable under section 1346(b)'").

The FTCA has procedural and jurisdictional requirements. *See Staggs v. U.S. ex rel. Dep't of Health and Human Servs.*, 425 F.3d 881, 885 (10th Cir. 2005) (stating that the "FTCA's presentation requirements are jurisdictional and cannot be waived") (citation omitted).  The Tenth Circuit has summarized the FTCA requirements as follows:

> Under the FTCA, filing an administrative claim with the appropriate
> federal agency is a prerequisite to bringing a civil action against the

> United States for damages for the negligence or wrongful act of any
> United States employee.  28 U.S.C. § 2675(a); *Three-M Enterprises,*
> *Inc. v. United States*, 548 F.2d 293, 294 (10th Cir. 1977) . . .  A claim
> is deemed presented when a federal agency receives from a claimant
> "an executed Standard Form 95 or other written notification of an
> incident, accompanied by a claim for money damages in sum certain
> for  . . . personal injury, or death alleged to have occurred by reason
> of the incident."  28 C.F.R. § 14.2(a).  "[B]ringing an administrative
> claim is a jurisdictional prerequisite to suit, imposed by Congress,
> which the courts have no power to waive."  *Nero v. Cherokee Nation*
> *of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir. 1989); *see also*
> *Bradley v. United States*, 951 F.2d 268, 270 (10th Cir. 1991).

*Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 967 (10th Cir. 1994).

Section 2675(a) provides that "[a]n action shall not be instituted" upon an FTCA claim "unless the

claimant shall have first presented the claim to the appropriate Federal agency and his claim shall

have been finally denied by the agency in writing . . . ."  *Id*. at n.1.  The amount of damages claimed

in a lawsuit under the FTCA is limited to "the amount of the claim presented to the federal agency."

28 U.S.C. § 2675(b); *see McNeil v. United States*, 508 U.S. 106, 108 n.2 (1993) (citing 28 U.S.C.

§ 2675(a)).

Therefore, exhaustion of administrative remedies is a prerequisite to suit under the FTCA,

and courts lack jurisdiction over FTCA claims not presented to the appropriate federal agency.

*See* 28 U.S.C. § 2675(a); *Greenlee v. U.S. Postal Serv.*, 247 F. App'x 953, 954–55 (10th Cir. 2007).

"Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice

requirements established by the FTCA must be strictly construed."  *Bradley v. United States by*

*Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991) (citation omitted).  "The requirements are

jurisdictional and cannot be waived."  *Id*. (citation omitted); *Duplan v. Harper*, 188 F.3d 1195,

1199 (10th Cir. 1999) ("As a jurisdictional prerequisite, the FTCA bars claimants from bringing

suit in federal court until they have exhausted their administrative remedies.") (citing 28 U.S.C.

§ 2675(a); *McNeil*, 508 U.S. at 113; *Pipkin v. U.S. Postal Service*, 951 F.2d 272, 273 (10th Cir.

1991)).  Plaintiff has not alleged facts establishing that he exhausted the administrative tort claim remedy in a proper and timely manner prior to filing this action.  This Court cannot exercise jurisdiction over an administratively unexhausted claim.

**8.  Requests for Relief**

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e); *see also Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying § 1997e(a) to First Amendment claim and finding that "[t]he statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional.") (citation omitted); *see also Massingill v. Livingston*, 277 F. App'x 491, 492 (5th Cir. 2008) (rejecting claim that district court erred in relying on § 1997e(e) to dismiss plaintiff's First Amendment and RLUIPA claims); *Godbey v. Wilson*, 2014 WL 794274, at *7 (E.D. Va. 2014) (citing § 1997e(e) and finding that "plaintiff's attempt to recover damages under RFRA and *Bivens* fail because he is an incarcerated felon and has not alleged that he suffered any physical injury as the result of the conduct he challenges") (citing *see Tsosie v. Garrett,* 409 Fed. App'x 262, 263 (11th Cir. Nov. 29, 2010) (affirming dismissal of prisoner's *Bivens* claims where he failed to allege physical injury, as required by § 1997e(e)), *cert. denied,* 132 S. Ct. 466 (2011)).

As set forth above, any request for injunctive relief is moot.  Likewise, "[a] claim for declaratory relief that does not 'settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff' is moot, *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotations omitted), because it fails to 'seek[] more than a retrospective opinion that [the plaintiff] was

wrongly harmed by the defendant[.]" *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011)); *see also Church v. Polis*, 2022 WL 200661, at *4 (10th Cir. Jan. 24, 2022) ("But declaratory-judgment claims become moot if circumstances change such that the defendants are not 'actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights.'") (citation omitted).

### 9. Exhaustion

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The BOP's four-part administrative remedy program is codified at 28 C.F.R. § 542. The exhaustion requirement allows the BOP "an opportunity to correct its own mistakes . . . before it is hauled into federal court" and it discourages "disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotations omitted). The exhaustion requirement is satisfied when the petitioner "us[es] all steps that the agency holds out." *Id.* at 90. The administrative remedy program requires an attempt at the informal resolution of a grievance followed by formal grievances addressed at the institutional, regional, and national levels.

Plaintiff alleges that he submitted his claims in written form to the USPL Warden and the Warden failed to reply, "and thus the prison administrative remedy process failed to produce satisfactory resolution." (Doc. 1, at 4.) Plaintiff also asserts that he raised his concerns with the chaplains and psychologists at USPL. (Doc. 1, at 6.) Plaintiff has not asserted that he addressed

grievances at the regional and national levels.

## IV.  Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **March 10, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed.

**IT IS SO ORDERED**.

**Dated February 10, 2023, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**